UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JEFFREY E.,[1]

                          Plaintiff,

                                                                   Case # 19-CV-1562-FPG

v.

                                                                   DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                          Defendant.

## INTRODUCTION

Plaintiff Jeffrey E. brings this action pursuant to the Social Security Act seeking review of the final decision of the Commissioner of Social Security that denied his application for disability insurance benefits ("DIB") under Title II of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. § 405(g). Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 19, 20. For the reasons that follow, the Commissioner's motion is DENIED, Plaintiff's motion is GRANTED, and this matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion.

## BACKGROUND

In February 2017, Plaintiff applied for DIB under Title II of the Act with the Social Security Administration (the "SSA"). Tr.[2] 14, 107. He alleged disability beginning on July 15, 2016 due to carpal tunnel, arthritis, knee problems, feet problems, neck injury, and back pain. *Id.* On December 17, 2018, Plaintiff and a vocational expert appeared and testified at a hearing before Administrative

---

[1] Under this District's Standing Order, any non-government party must be referenced solely by first name and last initial.

[2] "Tr." refers to the administrative record in this matter. ECF No. 18.

Law Judge Charles Woode ("the ALJ"). Tr. 14, 25. On March 12, 2019, the ALJ issued a decision finding that Plaintiff was not disabled. Tr. 14–25. On September 3, 2019, the Appeals Council denied Plaintiff's request for review. Tr. 1–3. This action seeks review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks omitted). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (internal quotation marks omitted). It is not the Court's "function to determine *de novo* whether plaintiff is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (internal quotation marks and brackets omitted).

### II. Disability Determination

An ALJ must follow a five-step sequential evaluation process to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of New York*, 476 U.S. 467, 470–71 (1986); 20 C.F.R. § 404.1520(a). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled. *Id.* If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform

2

basic work activities. *Id.* § 404.1520(a)(4)(ii), (c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." *Id.* If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 404.1520(a)(4)(iii). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id.* If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations caused by his or her collective impairments. *See id.* § 404.1520(a)(4)(iv), (e)–(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits claimant to perform the requirements of his or her past relevant work. *Id.* § 404.1520(a)(4)(iv). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 404.1520(a)(4)(v), (g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (internal quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I. The ALJ's Decision

The ALJ analyzed Plaintiff's claim for benefits using the process described above. At step one, the ALJ found that Plaintiff had not engaged in any substantial gainful activity from July 15,

2016 through the date of the ALJ's decision. Tr. 17. At step two, the ALJ found that Plaintiff had three severe impairments: cervical degenerative joint disease, status post discectomy and fusion, bilateral carpal tunnel syndrome, and right ulnar neuropathy. *Id.* At step three, the ALJ found that these impairments did not meet or medically equal any Listings impairment. Tr. 18.

Next, the ALJ determined that Plaintiff had the RFC to perform light work with certain limitations. Tr. 18–19. Specifically, the ALJ found that Plaintiff could: frequently handle and finger with the right hand; frequently move his head up or down or rotate his neck to the left or right; and occasionally stoop, crouch, reach overhead with the right upper extremity, and push or pull controls with the right hand. *Id.* The ALJ also concluded that Plaintiff could not climb ladders, ropes, or scaffolds, and that Plaintiff must avoid "concentrated exposure" to uneven terrain and hazards such as commercial driving, unprotected heights, and dangerous machinery. *Id.* At steps four and five, the ALJ found that Plaintiff was not capable of performing his past relevant work but that there were other jobs that existed in significant numbers in the national economy that he could perform. Tr. 23. The ALJ therefore concluded that Plaintiff had not been disabled from July 15, 2016 through the date of the decision. Tr. 25.

**II.     Analysis**

With scant citation to authority, Plaintiff argues that the ALJ erred in multiple respects. ECF No. 19-1. Because remand is appropriate based on the ALJ's RFC determination as it relates to Plaintiff's ability to reach overhead, the Court declines to address Plaintiff's remaining arguments.

A claimant's RFC reflects what he "can still do despite his . . . limitations." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (internal quotation marks omitted). An RFC determination need not "perfectly correspond" with the medical source opinions cited in the ALJ's decision;

rather, the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order). But "[a]n ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Wilson v. Colvin*, No. 13-CV-6286, 2015 WL 1003933, at *21 (W.D.N.Y. Mar. 6, 2015) (internal quotation marks omitted). In other words, an ALJ's ability to make inferences regarding the functional limitations caused by an impairment does not extend beyond that of an ordinary layperson. "While an ALJ may render common sense judgments about functional capacity, she must avoid the temptation to play doctor." *Agostino v. Comm'r of Soc. Sec.*, No. 18-CV-1391, 2020 WL 95421, at *3 (W.D.N.Y. Jan. 8, 2020) (internal quotation marks and brackets omitted).

Here, Plaintiff sustained injuries in a motor vehicle accident on his alleged onset date, July 15, 2016. Tr. 368. The ALJ found that Plaintiff had severe impairments of cervical degenerative joint disease, status post discectomy and fusion, bilateral carpal tunnel syndrome, and right ulnar neuropathy. Tr. 17. In his RFC, the ALJ found that, despite these impairments, Plaintiff was capable of performing a range of light work with highly specific restrictions. Tr. 18–23. Although Plaintiff challenges the ALJ's RFC determination in several respects, ECF No. 19-1 at 11–16, the ALJ's determination regarding Plaintiff's ability to overhead reach is particularly troubling.

There is no medical opinion supporting this limitation. Aside from the opinion of Christopher King, M.D.,[3] Tr. 14, 42–47, the ALJ gave little, limited, or partial weight to all of the

---

[3] The ALJ declined to consider the treating source opinion of Dr. King and other evidence that was untimely submitted by Plaintiff. Tr. 14, 42–47. Plaintiff makes multiple arguments based on Dr. King's opinion, but Plaintiff fails to make any argument addressing the ALJ's actual reason for declining to consider Dr. King's opinion. ECF No. 19-1 at 12, 14–15, 21, 23. Accordingly, the Court declines to find that the ALJ erred in failing to consider Dr. King's opinion, even though that opinion clearly conflicts with the ALJ's RFC assessment. *See Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) ("[W]here the claimant is represented

medical opinions in the record. Tr. 22–23. Most of these opinions are provided by treatment sources or independent medical examiners. *Id.* A few note some functional limitations, but most generally express the opinion that Plaintiff is "disabled" from employment in some capacity. *Id.* The ALJ did not err in rejecting conclusory opinions that Plaintiff was disabled. Tr. 22; *see Morris v. Colvin*, No. 15-CV-5600, 2016 WL 7235710, at *8 n.2 (E.D.N.Y Dec. 14, 2016) (noting that ALJ was justified in rejecting opinion that plaintiff was "totally and permanently disabled from work" because it was an issue reserved for the commissioner).

The ALJ afforded "partial weight" to the only opinion that directly addressed Plaintiff's capacity for overhead reading, the opinion of consultative examiner Trevor Litchmore, M.D., Tr. 23, 397, 400. On March 23, 2017, Dr. Litchmore examined Plaintiff and opined that Plaintiff had marked limitations in overreaching on a constant basis with the shoulders, lifting heavy weights or carrying heavy objects, climbing, and activities that involve constant flexion and extension of his neck Tr. 397, 400. Most of the ALJ's RFC determination appears consistent with Dr. Litchmore's opinion. *See* 20 C.F.R. § 404.1567(b) (noting limitation to light work means "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds"); *Potts v. Comm'r of Soc. Sec.*, No. 18-CV-126, 2018 WL 5886909, at *3 n.4 (W.D.N.Y. Nov. 9, 2018) (noting that opinion that claimant had "moderate to marked limitations in his ability to climb" was "fairly consistent" with RFC determination that claimant could only "occasionally climb[] ramps or stairs but never climb[] ladders, ropes, or scaffolds"); *DeRosia v. Colvin*, No. 16-CV-6093, 2017 WL 4075622, at *21 (W.D.N.Y. Sept. 14, 2017) ("I find that Brown's assessment

---

by counsel before the district court, the claimant must present the relevant legal arguments in that forum in order to preserve them for appellate review."); *McLear v. Saul*, No. 18-CV-1170, 2020 WL 1530835, at *5 (W.D.N.Y. Mar. 31, 2020) (declining to find error in ALJ's refusal to admit evidence submitted after hearing where plaintiff's "submissions d[id] not explain why [p]laintiff was entitled to have the excluded evidence considered").

of moderate to marked limitations for stair climbing and kneeling is consistent with the ALJ's conclusion that DeRosia could only occasionally climb stairs and could never kneel."). The ALJ's determination regarding Plaintiff's ability to reach overhead, however, is inconsistent with Dr. Litchmore's opinion. Tr. 18, 400.

Instead of applying a limitation to both shoulders, the ALJ rejected Dr. Litchmore's opinion and only limited Plaintiff's RFC to occasional overhead reaching with the right upper extremity. Tr. 18; *see York v. Comm'r of Soc. Sec.*, 357 F. Supp. 3d 259, 261–62 (W.D.N.Y. 2019) (holding that, although ALJ gave "partial" weight to "the only medical opinion evidence of record," the ALJ's rejection of the opinion in relevant part meant that the ALJ's RFC assessment was "not supported by substantial evidence"); *see also Garrett v. Comm'r of Soc. Sec.*, No. 17-CV-1009, 2019 WL 2163699, at *5 (W.D.N.Y. May 17, 2019) ("By not assigning significant weight to any opinions and, instead, assigning them only limited weight, the ALJ created an evidentiary gap in the record requiring remand."). Accordingly, the ALJ's RFC limitation regarding overhead reaching is unsupported by any competent medical opinion.

In some circumstances it is appropriate for an ALJ to make an RFC finding without relying on a medical opinion, particularly where the record contains sufficient evidence from which the ALJ could assess a claimant's RFC. *See, e.g.*, *Pellam v. Astrue*, 508 F. App'x 87, 90–91 (2d Cir. 2013) (summary order) (upholding an ALJ's RFC determination where the ALJ "rejected" a consultative examiner's opinion but the "opinion largely supported the ALJ's assessment of" claimant's RFC and the RFC was supported by the treatment notes of claimant's doctors); *Cook v. Comm'r of Soc. Sec.*, 818 F. App'x 108, 109–10 (2d Cir. 2020) (summary order) (finding that, "although there was no medical opinion providing the specific restrictions reflected in the ALJ's RFC determination," that determination was supported by substantial evidence because the

plaintiff "failed to adduce any medical evidence inconsistent with the ALJ's determinations"). Still, the Second Circuit recently reaffirmed that "a circumstantial critique by non-physicians, however thorough or responsible, must be overwhelmingly compelling in order to overcome a medical opinion." *Riccobono v. Saul*, 796 F. App'x 49, 50 (2d Cir. 2020) (summary order) (internal quotation marks omitted). The ALJ's critique here does not rise to that standard.

Without citation to specific medical records, the ALJ justified limiting his restriction on overhead reaching to only the right extremity by claiming medical records show "reduced shoulder range of motion, primarily in the right arm." Tr. 20. Dr. Litchmore, however, noted consistent range of motion deficits in both arms and explicitly diagnosed Plaintiff with "[b]ilateral shoulder moderate abduction deficits." Tr. 399–400.[4] Further, physical therapy records note range of motion deficits in both arms that are either consistent or that are only slightly different for each arm. Tr. 453, 457, 460, (noting consistent range of motion in the right and left shoulders), 465 (noting slightly more range of motion in the right shoulder's extension and slightly less range of motion in the right shoulder's abduction compared to the left shoulder), 469, 473, 477, 481 (noting slightly less range of motion in the right shoulder).[5] The ALJ also cited these physical therapy notes as

---

[4] The ALJ's apparent rejection of these findings is inexplicable given that the ALJ cited the range of motion deficits noted by Dr. Litchmore in giving the opinion of independent medical examiner William Cotanch, M.D., partial weight. Tr. 22. The ALJ found the range of motion deficits "consistent with Dr. Cotanch's conclusion that [Plaintiff] cannot climb ladders." *Id.* Confusingly, Dr. Cotanch did not opine that Plaintiff could not climb ladders. Tr. 429, 429, 433. Instead, Dr. Cotanch opined that Plaintiff was "totally disabled" from his prior work on three separate occasions, and on the first occasion specifically noted that this was because "he climbs trees" (without noting whether he used a ladder or some other device to climb trees). *Id.* It is completely unclear to the Court how the range of motion deficits noted by Dr. Litchmore could support a finding that Plaintiff cannot climb ladders and not also support bilateral deficits in Plaintiff's capacity to reach overhead.

[5] A week after Plaintiff's accident, on July 21, 2016, Jagmohan Singh, M.D., noted Plaintiff had "numbness in both upper extremities" and "difficulty raising the right arm above the shoulder joint." Tr 515. But less than a month later, Dr. Singh indicated Plaintiff had normal range of motion in his right shoulder. Tr. 517. To the extent the ALJ intended to reference Dr. Singh's July 21, 2016 progress note, the ALJ engaged in impermissible cherry picking. *See Younes v. Colvin*, No. 14-CV-170, 2015 WL 1524417, at *8 (N.D.N.Y.

suggesting that Plaintiff had the "ability to abduct beyond one hundred twenty-five degrees *bilaterally*," Tr. 23 (emphasis added), which the ALJ characterized as "inconsistent with marked limitations in . . . reaching," but even to the extent the ALJ is correct, the ALJ fails to explain how such bilateral observations support his rejection of Dr. Litchmore's opinion and differential treatment of the right and left arms.

Perhaps the ALJ intended to reference other difficulties Plaintiff has reported with his right arm. Although he did report some left shoulder pain immediately after his motor vehicle accident, Tr. 441–42, multiple medical records reflect complaints of pain and/or weakness in the right arm. Tr. 408, 415, 425, 428, 431–32, 452–54, 457–58, 460–61, 503, 517, 561, 586, 700; *see also* Tr. 68 (testifying to numbness and sharp, stabbing pains in his right arm); Tr. 511 (opining that Plaintiff "would only be capable of performing mostly left-handed work"). *But see* Tr. 465, 469, 473, 477 (noting consistent strength in both shoulders), 481 (noting slightly more strength in the right shoulder). Although these records may support some greater limitation in function of Plaintiff's right arm relative to his left, such as the ALJ's limitations on Plaintiff's ability to handle, finger, and use push or pull controls with the right hand, it is unclear how these records support the divergence in overhead reaching, particularly considering Dr. Litchmore's contrary opinion and Plaintiff's multiple impairments. *See Agostino*, 2020 WL 95421, at *4 ("[G]iven the lack of any competent medical opinion, the Court, like the ALJ, is not in a position to assess the extent of functional limitation posed by [Plaintiff]'s impairments.").

Nor does the ALJ's RFC determination find support in Plaintiff's testimony. Plaintiff did not suggest that his limited ability to reach overhead was localized to his right arm. Tr. 84. In fact, he claimed an inability to reach up and get anything out of cabinets over his head. Tr. 91. The

---

Apr. 2, 2015) ("'Cherry picking' can indicate a serious misreading of evidence, failure to comply with the requirement that all evidence be taken into account, or both.").

9

Court is accordingly left unable to find support for the ALJ's disparate treatment of the right and left extremities as to Plaintiff's ability to reach overhead.

Absent sufficient analysis regarding the ALJ's formulation of Plaintiff's RFC with respect to Plaintiff's ability to reach overhead or a competent medical opinion, "the Court does not have an adequate basis for judicial review." *Drabczyk v. Comm'r of Soc. Sec.*, No. 18-CV-355, 2020 WL 4390701, at *5 (W.D.N.Y. July 31, 2020). Such an error creates "an evidentiary gap in the record requiring remand." *Zayas v. Colvin*, No. 15-CV-6312, 2016 WL 1761959, at *4 (W.D.N.Y. May 2, 2016); *see also Defrancesco v. Berryhill*, No. 16-CV-6575, 2017 WL 4769004, at *4 (W.D.N.Y. Oct. 23, 2017) (holding that the ALJ giving "little weight" to "the only physical medical opinion in the record created an evidentiary gap that require[d] remand"). Accordingly, remand is warranted for further development of the record.

## CONCLUSION

For all of the reasons stated, the Commissioner's Motion for Judgment on the Pleadings, ECF No. 20, is DENIED, and Plaintiff's Motion for Judgment on the Pleadings, ECF No. 19, is GRANTED. This matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion, pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: March 19, 2021
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court